IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. SAG-24-165 |
| | * | |
| ALONZO PLENTY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**GOVERNMENT'S MOTION *IN LIMINE* REGARDING ADMISSION OF EVIDENCE
OF PRIOR ACTS OF FIREARM POSSESSION AND DRUG TRAFFICKING**

The United States of America, through the undersigned attorneys, submits this Motion *in Limine* regarding the admission of certain evidence from the Defendant Alonzo Plenty's ("Defendant" or "Plenty") two cell phones that show multiple instances prior to the conduct charged in the Indictment of the Defendant possessing firearms and selling drugs. The evidence at issue is properly admissible under Fed. R. Evid. 404(b) as reliable evidence of the Defendant's knowledge, intent, and lack of mistake and Fed. R. Evid. 403 because the evidence is not substantially more prejudicial than probative.

**FACTUAL BACKGROUND**

Defendant is currently charged with: (1) possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1); (2 & 4) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

The Defendant's charges stem from a March 5, 2024, incident in which the Defendant fled from police and discarded a loaded firearm during flight. Law enforcement arrested the Defendant. During a search incident to arrest, law enforcement recovered 32 small baggies of cocaine base, 26 two-toned gel caps of a sham controlled dangerous substance ("CDS"), approximately $3,255,

and two cell phones (an iPhone and a flip phone). Police recovered the firearm while pursuing the Defendant, which was identified as a Glock model 22, reported stolen from a Baltimore Police Department officer, loaded with nineteen rounds of ammunition in a high-capacity magazine. The firearm was also equipped with a specially added blue laser. During the booking process on March 6, 2024, the Defendant tried to refuse a strip search, escape, and discard 50 buprenorphine strips into a holding cell. Those attempts were unsuccessful, and law enforcement recovered the controlled substances.

Trial is scheduled to begin on April 20, 2026. The Government expects to introduce multiple exhibits that come from the Defendant's cellphone from the days and weeks prior to his arrest where he is in possession of a firearm that is substantially similar to the one recovered on March 5, 2024, and text message conversations where the Defendant is discussing selling drugs. Specifically, this evidence includes:

- A video from the Defendant's iPhone recorded on January 13, 2024, of the Defendant and an unidentified woman attaching a blue laser to what appears to be a Glock handgun. **Exhibit A**, Screenshots from the video.[1]

- A video from the Defendant's iPhone recorded on January 13, 2024, of the Defendant singing and dancing with what appears to be a Glock handgun with a blue laser attached to it. **Exhibit B**, Screenshots from the Video.

- A text message conversation between Defendant's iPhone and phone number x4874 from January 25, 2024, where the Defendant sends a photo of himself pointing a Glock handgun with an attached laser at the camera. The Defendant sends that photograph as part of a text message that reads: "All blk wit a Glock" [sic]. Then on January 29, 2024, Defendant sends the same phone number a photograph of his bedroom with a bag of two-toned CDS gel caps on his bed. **Exhibit C**.

- Text message conversations with four individuals (one on the Defendant's iPhone and three from the Defendant's flip phone) from February 15, 2024 through March 4, 2024, where the Defendant was discussing acquiring and selling drugs. **Exhibit D-1, D-2, D-3, D-4.**

---

[1] The Government will bring and play the full videos for the Court during any hearing on this issue.

The Government anticipates that the defense will object to this evidence under Federal Rules of Evidence 404(b) and 403, as improper prior bad act evidence that is substantially more prejudicial than probative. For the reasons stated below, each exhibit is properly admissible.

## LEGAL ARGUMENT

**A. The Videos And Photograph Of The Defendant With What Appears To Be The Same Firearm In The Months Prior To His Arrest Should Be Admitted Under Rule 404(B) And 403 Because They Are Reliable Evidence Of Similar Behavior To The Charged Conduct That Shows The Defendant's Knowledge, Intent, And Lack Of Mistake.**

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, the rule does permit the introduction of evidence of other crimes for any other valid purpose, such as "proving motive, opportunity, **intent**, preparation, plan, **knowledge**, identity, **absence of mistake**, or lack of accident." *Id.* (emphasis added). The Fourth Circuit has held that Rule 404(b) is "a rule of inclusion." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009).

The Fourth Circuit has established a four-part test to assess the admissibility of evidence under Rule 404(b):

> (1) the evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant;
>
> (2) the act must be necessary in the sense that it is probative of an essential claim or an element of the offense;
>
> (3) the evidence must be reliable; and

3

(4) the evidence's probative value must not be <u>substantially</u> outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. Bell*, 901 F.3d 455, 465 (4th Cir. 2018) (quoting *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)) (emphasis added).

In this case, the Government intends to introduce Exhibits A, B, and C as evidence of the defendant's prior possession of handguns—in particular a handgun that is substantially similar to the one recovered on March 5, 2024. This evidence is relevant to the Defendant's knowledge, intent, and absence of mistake in possessing firearms. Not only are these Exhibits relevant to an issue other than character, but they are also necessary to prove intent. The Defendant's intent is directly at issue in this trial because he was charged with possession of a firearm in violation of §18 U.S.C. 922(g)(1), and a "felon's possession of a firearm must be both voluntary and intentional." *United States v. Scott*, 424 F.3d 431, 435 (4th Cir. 2005). The Defendant has placed his knowledge and intent directly at issue in this case by denying having a firearm at the time of his arrest, in jail calls, and by entering a plea of not guilty. *United States v. Day*, 229 F.3d 1144 (4th Cir. 2000)(stating that by pleading not guilty, the Defendant put his "intent at issue and thereby ma[de] relevant evidence of similar prior crimes when that evidence proves criminal intent."). For that reason, the Fourth Circuit has held that past possession of a firearm is relevant to proving intent in a subsequent prosecution for illegal firearm possession. *United States v. Comstock*, 412 F. App'x 619, 623–24 (4th Cir. 2011); *see also United States v. Griggs*, 241 Fed. App'x. 155, 159 (4th Cir. 2007) (concluding that evidence of the defendant's prior illegal firearms possession was admissible under Rule 404(b) because "[t]he similarity of the conduct alleged and the closeness in

time of the offenses" demonstrated the defendant's "knowledge, intent, as well as an absence of mistake or accident....").

Multiple other circuits have come to the same conclusion and held that past possession of firearms is relevant to proving the necessary element of intent. *See United States v. Moran*, 503 F.3d 1135, 1144 (10th Cir. 2007) ("[T]he fact that [defendant] knowingly possessed a firearm in the past supports the inference that he had the same knowledge in the context of the charged offense."); *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) ("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent...."); *United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003) ("[T]he caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental)."); *United States v. Cassell*, 292 F.3d 788, 794–95 (D.C.Cir. 2002) ("A prior history of intentionally possessing guns...is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so.").

The evidence is also reliable. This is not a case where the extrinsic evidence the Government seeks to enter is the testimony of third-party about what they saw the Defendant do in the past, such that reliably would be a large concern. Instead, the Exhibits at issue are electronic, time-stamped evidence that comes from the Defendant's iPhone that was found on his person when he was arrested. The videos and photograph clearly depict the Defendant, who is either looking directly into the camera and/or can be heard speaking on video. In each Exhibit the Defendant is holding, manipulating, or pointing the firearm at the camera. It is objective evidence that the

Defendant possessed a firearm that appears to be similar to the one recovered during his arrest within about six weeks of his arrest.

Finally, the probative value of Exhibits A, B, and C is extremely high, such that it would not be substantially outweighed by the possibility of confusion or unfair prejudice. Exhibit A shows the defendant and another individual attaching the distinctive blue laser to a handgun that looks substantially similar to the one recovered during the defendant's arrest a few weeks later. Exhibit B shows the Defendant alone with the same firearm, pointing it at the camera, using the blue laser, and placing the firearm in his "dip." Additionally, the video shows that the Defendant is in possession of large sums of cash, which can be indicative of drug trafficking. Exhibit C, at 1 and 4, shows that the defendant continued to possess the same handgun beyond January 13, 2024, such that it is more likely he continued to possess that handgun approximately five weeks later during his arrest. *See Queen*, 132 F.3d at 996 ("[T]he prior doing of other similar acts...is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances...that satisfies our logical demand.").

Any prejudicial effect from this evidence does not substantially outweigh its probative value. Evidence is unfairly prejudicial and thus should be excluded under Rule 403 or the last prong of the 404(b) *Queen* test when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence. *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006). Here, all of the Exhibits at issue involve conduct substantially similar to the charged offense, lessening the danger that the jury would be provoked to behave irrationally. *See United States v. Comstock*, 412 F. App'x 619, 624–25 (4th Cir. 2011). To the extent necessary, the Court can also issue a limiting instruction to

the jury to only consider the exhibits as evidence of intent, knowledge, or lack of mistake and not as evidence of bad character, which would mitigate any risk of prejudice. *See United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005) ("[A]ny risk of such prejudice was mitigated by a limiting instruction from the district court clarifying the issues for which the jury could properly consider [the Rule 404(b)] evidence.").

Accordingly, Exhibits A, B, and C are all properly admitted under Rules 404(b) and 403 to show the Defendant's knowledge, intent, and absence of mistake in possessing a handgun the night of his arrest.

**B. Evidence of the Defendant's Past Drug Dealing Should Be Admitted Under Rule 404(b) And 403 Because They Are Evidence Of Defendant's Knowledge And Intent Related To The Drugs In His Possession During His Arrest.**

The Government also intends to introduce evidence of the Defendant's past possession of what appears to be two-toned CDS gel caps, or at least CDS packaging (Exhibit C, at 2–3), and text message conversations with four individuals in the days and weeks prior to his arrest about buying and selling drugs (Exhibits D-1, D-2, D-3, and D-4). The Government is not introducing these text message conversations as evidence of the Defendant's bad character; instead, it is introducing these text messages to establish the Defendant's knowledge and intent the night he was arrested in possession of a large quantity of drugs. As Defendant is charged with possession *with intent* to distribute controlled substances in violation of 21 U.S.C. §841(a), this is not only a proper use of the evidence under Rule 404(b), but it also relates to a necessary element of the offenses charged, thus satisfying the first two prongs of the *Queen* analysis.

The Fourth Circuit has repeatedly held that evidence of the defendant's prior, similar drug transactions is generally admissible under Rule 404(b) as evidence of the Defendant's knowledge and intent. *United States v. Hinton*, 670 F. App'x 178, 179 (4th Cir. 2016)(admitting evidence of

7

two occasions of the defendant selling crack cocaine in the months before the charged drug offense); *United States v. Cabrera-Beltran*, 660 F.3d 742, 756 (4th Cir. 2011)(admitting testimony about drug transactions that occurred before the charged conduct to prove knowledge and intent); *United States v. Branch*, 537 F.3d 328, 341–42 (4th Cir.2008) (admitting evidence of prior arrest and conviction for possession with intent to distribute cocaine in subsequent prosecution for, inter alia, the same offense); *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir.2004) (admitting evidence of prior possession and sale of cocaine in subsequent prosecution for, inter alia, possession of cocaine with intent to distribute); *United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991)(holding that evidence of a defendant's involvement in prior drug transactions was admissible to prove intent in later drug trafficking incidents).

Similar to the videos and pictures discussed above, the photograph of the Defendant's bedroom and his text messages are reliable in that they are electronic evidence that comes from the two cell phones found on the Defendant's person during his arrest.  The cellphones contain other pictures of the Defendant from the timeframe of these conversations and other indicia that the Defendant possessed and was using the cell phones during the timeframe at issue.

Finally, the probative value of this evidence is high because it discusses similar conduct to the charged offense.  The Fourth Circuit has held that for prior narcotics activity to be admissible under 404(b), it must have a sufficient nexus to the charged offenses, i.e., the acts should be "related in time, manner, place, or pattern of conduct." *United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010).  That is exactly the case here.  The Exhibits at issue show a pattern in the days and weeks leading up to the Defendant's arrest of the Defendant acquiring, possessing, and selling the same type of drugs he was arrested with in the same area where he was arrested.

For example, in Exhibit C, at 2–4, on January 29, 2024, in order to prove he is at home, the Defendant sends the phone number x4874 a picture of his bedroom.  On his bed is a clear baggie of what appear to be two-toned gel caps of CDS, or at least CDS packaging similar to the gel-caps found on the Defendant's person during his arrest on March 5, 2024.

Defendant's text messages elaborate further on his knowledge and intent in possessing that CDS.  Defendant uses his iPhone to discuss acquiring "soft bread," "brother" and "girls" from an individual using phone number x9379 between February 15, 2024, and February 24, 2024. **Exhibit D-1**. Then on February 25, 2024, the Defendant tells a drug customer using phone number x0803 that he is "out all night wit [sic] boy and girl." **Exhibit D-2**, at 2. The Government's drug trafficking expert will explain at trial that the terms "girl" and "soft" refer to cocaine, and the terms "boy" or "brother" refer to heroin/fentanyl. The text messages also describe how and where the Defendant sells his drugs.  Defendant tells his source of supply using phone number x9379 that he made "$690 off the block and $272 off my phone" on February 24, 2024. **Exhibit D-1**, at 5. Defendant later tells a drug customer using phone number x1766 on February 29, 2024, "you know I hug the block," meaning that he sells drugs out on the street.  **Exhibit D-3**, at 4**.**  On March 1, 2024, when that same customer inquires about more drugs, Defendant replies, "9th." *Id*., at 9. On March 5, 2024, the Defendant had approximately 32 baggies of cocaine base and 26 gel caps of what appeared to be heroin[2] on his person at approximately the 3600 block of 9th Street. Defendant's conversation with another drug customer using phone number x9017 on March 4, 2024, show that the Defendant will also deliver drugs to customers who contact him on his flip phone.  **Exhibit D-4.**

---

[2] A certified drug lab ultimately concluded that these gel caps did not contain controlled substances, but the Government expects its drug trafficking expert to testify that the packaging is consistent with typical street packaging of heroin.

Because the prior acts of drug trafficking are substantially similar to the conduct the Defendant is charged with, the danger that the jury would be provoked to behave irrationally is low, and any remaining danger of unfair prejudice could be alleviated with a cautionary jury instruction. *Cabrera-Beltran*, 660 F.3d at 756. Accordingly, the text messages in Exhibit D are properly admitted under both Rule 404(b) and 403.

## CONCLUSION

Exhibits A, B, C, and D[3] are admissible despite depicting instances of the Defendant possessing firearms and selling drugs prior to the conduct charged in the Indictment pursuant to Rule 404(b) because they relate to the Defendant's knowledge, intent, and lack of mistake. The Exhibits are also reliable and relate to a necessary element the government must prove. Finally, due to the similarities between the Defendant's prior actions depicted in the Exhibits and the conduct he is charged with, the risk of unfair prejudice does not substantially outweigh the highly probative value of the evidence. Therefore, the Court should grant the Government's Motion *in Limine* and admit Exhibits A, B, C, and D into evidence at trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:_____/s/_____
Liane D. Kozik
Special Assistant United States Attorney

James I. Hammond
Assistant United States Attorney

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

---

[3] Each of these exhibits will be renumbered at trial.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of March, 2026, a copy of the foregoing Motion *in Limine* was electronically filed with the Clerk of Court via CM/ECF and thereby served on all counsel of record.

_____/s/_____

Liane D. Kozik

Special Assistant United States Attorney